UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON


CIVIL ACTION NO. 11-09-GWU


HAROLD BULLOCK,                                                PLAINTIFF,


VS.                              **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.


## INTRODUCTION

Harold Bullock brought this action to obtain judicial review of an administrative decision denying his application for Disability Insurance Benefits (DIB). The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.   Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.   If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3.   The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-

2

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions  .  .  .  or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

4

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Bullock, a 32-year-old[1] former landscape laborer and building maintenance worker with a high school education, suffered from impairments related to obesity, generalized anxiety disorder, somatic pain disorder, mild discogenic changes of the lumbar spine without neural compression, having a subtle small tear in the cephalad margin of the anterior horn of the medial meniscus of the left knee and being status post right shoulder rotator cuff tear.  (Tr. 21, 28).  While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of medium level work.  (Tr. 24, 28). Since the available work was found to constitute a significant number of jobs in the

---

[1]This was the plaintiff's age as of June 30, 2002, the date he was last insured for the purposes of DIB.  (Tr. 28).

national economy, the claimant could not be considered totally disabled.  (Tr. 28-29).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 29).

The time period relevant to this appeal is very important.  Bullock, who initially alleged a disability onset date of November 15, 1999 on his DIB application (Tr. 127), amended this to December 28, 2000 at the administrative hearing (Tr. 45).  The plaintiff's DIB-insured status was found to have expired on June 30, 2002. (Tr. 21).  The claimant must prove he became disabled between December 28, 2000 and June 30, 2002 to qualify for DIB.

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Betty Hale included an exertional restriction to medium level work, restricted from a full range by such non-exertional limitations as (1) an inability to more than frequently push, pull or reach overhead with the right upper extremity; (2) an inability to more than frequently climb stairs or ramps, stoop, kneel, crouch, or crawl; (3) an inability to more than occasionally climb ladders, ropes or scaffolds; (4) a need to avoid concentrated exposure to full body vibrations and avoid hazards such as unprotected heights and dangerous machinery; (5) a limitation to simple work activities in a low-stress work environment in which contact with co-workers and

supervisors is infrequent and casual; and (6) a restriction to non-public settings in which changes in the work setting would be infrequent, routine and gradual. (Tr. 72). In response, Hale testified that the plaintiff's past relevant work could not be performed. (Id.). However, the expert identified a significant number of other jobs in the economy which could still be done. (Tr. 72-73). Therefore, assuming that the vocational factors considered by Hale fairly depicted the claimant's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error. Dr. David Swan reviewed the record and opined that during the relevant time period, Bullock would have been limited to lifting a maximum of 50 pounds occasionally and 25 pounds on a frequent basis. (Tr. 486). The plaintiff could no more than occasionally climb ladders, ropes or scaffolds and should no more than frequently climb stairs and ramps, stoop and crouch. (Tr. 487). The hypothetical question was consistent with this opinion.

No treating or examining physician of record who saw Bullock prior to June 30, 2002, the date last insured (DLI), identified the existence of more severe physical restrictions than those found by the ALJ, including Dr. Michael Grefer (Tr. 259-262, 339-341) and the staff at the Kentucky Diagnostics Center (Tr. 268-275). Treatment notes from physicians who saw the plaintiff after the relevant time period, including Dr. Michael Sostok (Tr. 342-346), Dr. Michael Luggen (Tr. 367-389, 447-

7

470), and the staff at the Veteran's Administration Medical Center (Tr. 493-528, 570-595, 598-616), did not identify the existence of physical restrictions which would "relate back" to the relevant time frame.

In December of 2002, a physical therapist evaluated Bullock and concluded that he was physically limited from performing more than a restricted range of light level work.[2] (Tr. 308).  This evaluation occurred six months after the DLI and, so, would not necessarily "relate back" to the pertinent time period.  Furthermore, the restrictions are the opinion of a physical therapist rather than a medical doctor.  Under the administrative regulations, a physical therapist is not an "acceptable medical source" whose opinion could be binding on the administration.  20 C.F.R. § 404.1513.  Thus, this opinion was not binding on the ALJ.  Therefore, the court finds that the ALJ dealt properly with the evidence of record relating to the claimant's physical status

The ALJ dealt properly with the evidence of record relating to Bullock's mental status.  Psychologist George Parsons saw the plaintiff during the relevant time period and opined in January of 2001 that the claimant would be unable to perform work activity due to his mental condition.  (Tr. 207).  The ALJ rejected this opinion because he did not believe that a treating relationship between Parsons and the plaintiff had been well-established in the record.  (Tr. 27).  The court notes that

---

[2]The therapist's name is illegible.  (Tr. 307).

even if Parsons's status as a treating source was not questionable, the issue concerning whether a claimant is disabled is reserved to the Commissioner and a opinion from even a treating source that one is disabled is not binding on the Commissioner.  20 C.F.R. § 404.1527(e)(1).  Therefore, the undersigned finds no error with the ALJ's rejection of this opinion.

Psychologist Kevin Murphy reported in April of 2004 that he took over treatment of Bullock from Parsons and reported a diagnosis of generalized anxiety disorder.  (Tr. 319).  He opined that the plaintiff was unable to work.  (Id.).  Like the opinion of Parsons, this disability opinion would not be binding on the administration under the federal regulations.

In May of 2008, Murphy identified a number of very severe mental restrictions including an "inability to meet competitive standards" in such areas as maintaining attention for two-hour segments, working in coordination with others without being distracted, completing a normal workweek and workday without interruption from psychologically-based symptoms, responding appropriately to changes in work routine, and dealing with normal stress.  (Tr. 536).  The claimant's ability was noted to be "seriously limited but not precluded" in such areas as sustaining an ordinary routine without outside supervision, accepting instruction and criticism from supervisors, and getting along with peers and co-workers without distracting them or exhibiting behavioral extremes.  (Id.).  These are far more severe mental limitations than those found by the ALJ.  The ALJ rejected these specific mental

limitations as binding because they were offered well after the DLI and do not necessarily "relate back" to the relevant time period. (Tr. 27). This action appears appropriate. While Murphy reports having begun a treating relationship with the plaintiff in June of 2001 (Tr. 444), the record indicates that the vast majority of Murphy's treatment of the plaintiff occurred after June 30, 2002 with exhibits dated from April, 2004 to August, 2009 (Tr. 319-321, 443-446, 533-547, 561-562, 596-597). Significantly, the psychologist does not specify that these restrictions relate only to the relevant time period. Therefore, the undersigned finds no error in the ALJ's rejection of them.

Dr. James Hawkins examined Bullock on several occasions. In July of 2000, just before the relevant time period, Dr. Hawkins reported that the plaintiff was anxious and depressed. (Tr. 332). He had taken Xanax for a number of years. (Id.). He denied a history of alcoholism or substance abuse. (Id.). The claimant denied suicidal and homicidal thoughts and there was no evidence of hallucinations or organic impairment. (Id.). The doctor opined that Bullock suffered from a depressive illness with phobias and anxiety. (Tr. 333). The examiner did not identify any mental limitations at this time.

In June of 2001, Dr. Hawkins examined Bullock who was reported to be doing well in school. (Tr. 335). He was less depressed. (Id.). In June of 2002, he was reported to still be doing well in school and in an upbeat mood. (Id.).

In July of 2004, Dr. Hawkins again examined Bullock and indicated that the plaintiff suffered from major depression and a generalized anxiety disorder.  (Tr. 301).  The claimant had withdrawn from school due to difficulty managing stress. (Id.).  Dr. Hawkins opined that the claimant would be incapable of working.  (Tr. 302).  Again, this disability opinion would be an issue reserved to the Commissioner and not binding on the ALJ.

In June of 2008, Dr. Hawkins again examined Bullock who noted that the Veteran's Administration had found him disabled and that he had failed in school. (Tr. 558).  In August of 2008, Dr. Hawkins completed a mental assessment indicating that the plaintiff would have a "seriously limited but not precluded" ability in such areas as maintaining attention in two-hour segments, maintaining regular attendance and being punctual within customary strict tolerances, sustaining an ordinary routine without special supervision, completing a normal workday and workweek without interruptions from psychologically-based symptoms, performing at a consistent pace without an unreasonable length and number of rest periods, responding to changes in a routine work setting, dealing with normal stress, and being aware of normal hazards and taking precautions.  (Tr. 555).  These are far more severe mental restrictions than those found by the ALJ.

The ALJ felt that this August, 2008 opinion, offered more than six years after the DLI, was too remote in time.  (Tr. 27).  Furthermore, the examiner had noted a Global Assessment of Functioning Rating of 65.  (Tr. 553).  Such a GAF indicates

the existence of only "mild" psychological symptoms according to the American Psychiatric Association's <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34.  The ALJ further opined that this modest GAF rating was inconsistent with the severe mental limitations noted.  (Tr. 27).

The court finds that the ALJ acted appropriately in rejecting Dr. Hawkins's restrictions.  While the doctor did see Bullock during the relevant time period, significantly, he did not indicate that the plaintiff suffered from these restrictions at that time.  The June, 2008 report indicates that the claimant's failure in school due to stress was a major factor affecting the physician's opinion.  (Tr. 558).  However, the doctor's own reports from June, 2001 and June, 2002 indicate that the claimant was doing well in school at that time.  (Tr. 335).  A report from the Kentucky Department of Vocational Rehabilitation also indicates that the plaintiff was doing well in school during the time period relevant to this appeal.  (Tr. 276).  This report indicates that he only left school due to stress, in May of 2004, almost two years after the DLI.  (Id.).  Thus, the evidence does not suggest that Dr. Hawkins's August, 2008 mental restrictions "relate back" to the relevant time period.

Psychologist Thomas McCann examined Bullock in December of 2000, just prior to his onset date, and diagnosed a generalized anxiety disorder, a depressive disorder, and a personality disorder.  (Tr. 281).  McCann did not identify the existence of more severe mental limitations than those found by the ALJ.

Dr. John Redden treated Bullock over a number of years from January, 1999 until April 2009.  (Tr. 390-428, 529-532, 563-569).  The physician noted nerve problems but did not impose specific functional limitations.

Psychologists Ed Ross (Tr. 429-442) and Jane Brake (Tr. 471-484) each reviewed the record and opined that it contained insufficient evidence from the relevant time period concerning Bullock's mental condition.  Thus, these reports also do not support the plaintiff's claim.

Bullock asserts that the ALJ rejected the opinions of all the treating and examining sources and impermissibly substituted his own lay opinion for those of the mental health professionals.  However, the plaintiff had the burden of coming forward with sufficient evidence to prove his claim.  The ALJ noted good reasons why each of the examiners' opinions was not binding with regard to the relevant time period.  Therefore, the court finds no error.

The court notes that Bullock submitted additional medical records directly to the Appeals Council which were never seen by the ALJ.  This action raises an issue concerning a remand for the taking of new evidence before the Commissioner.  Cotton v. Sullivan, 2 F.3d 692 (6th Cir. 1993).

A court may order additional evidence be taken before the Commissioner, " . . . but only upon a showing that there is new evidence to be taken which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g).  The statute provides that

a claimant must prove that the additional evidence is both "material" and that "good cause" existed for its not having been submitted at an earlier proceeding.  Sizemore v. Secretary of Health and Human Services, 865 F.2d 709, 710 (6th Cir. 1988).  In order to demonstrate "materiality," a claimant must show that a reasonable probability exists that the Commissioner would have reached a different conclusion if originally presented with the new evidence.  Sizemore, 865 F.2d at 711.  Thus, the new evidence must be "material" and "good cause" must be shown why it was not previously submitted.

The medical records with which Bullock seeks a remand of the action include treatment notes from George Parsons dated between November, 1999 and November, 2001 (Tr. 617-638) and a functional capacity assessment from Dr. Michael Grefer dated July, 2001 (Tr. 639–640).  The plaintiff asserts that these reports are "material" because they are dated from the relevant time period and address his mental and physical status during this period.  The court agrees that these reports are material.  However, the undersigned does not find "good cause" for their not having been submitted into record prior to the issuance of the ALJ's final decision.  The claimant asserts that "good cause" exists because his attorney was unable to obtain them any earlier due to the length of time which had passed since the claim had been opened.  As noted by the defendant, Bullock was able to obtain other documents from Parsons and Dr. Grefer and submit them into evidence.  (Tr. 259-262, 294-297).  The plaintiff needed to explain to the court why

these particular documents were more difficult to obtain in a timely fashion. Therefore, the "good cause" requirement is not satisfied and the claimant request for a remand for the purpose of incorporating new evidence into the record must be denied.

After a review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 3rd day of November, 2011.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**